## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

_____

                            )

**IN RE SCIENTIFIC-ATLANTA, INC.**  )    **Civil Action No.**
**SECURITIES LITIGATION**        )    **1:01-CV-1950-RWS**

_____   )

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Plaintiffs respectfully request this Court to certify, pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure ("Rule 23"), a class consisting of all persons (the "Class") who purchased or otherwise acquired the securities of Scientific-Atlanta, Inc. ("SFA") or who sold put options of SFA between January 18, 2001 and August 16, 2001, inclusive.[1]

Plaintiffs Alexander Peterson, Hugh G. Peterson III, Jack Graeber, Roger Hale, Sam Harris and Vigilant Investors (collectively, the "Proposed Class Representatives") respectfully request to be appointed as Class Representatives. Collectively, these representative Plaintiffs have suffered millions of dollars in losses as a result of Defendants' alleged misrepresentations and/or omissions.

---

[1]     Excluded from the Class are Defendants, the officers and directors of SFA, any entity in which Defendants or any excluded person has or had a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party.

Plaintiffs also respectfully request that the Court define the class claims, issues, or defenses in its Order, in accordance with the December 1, 2003 amendment to Fed. R. Civ. P. 23(c)(1)(B).  Plaintiffs propose the following definition of the class claims, issues, or defenses for this litigation:

> The class claims, issues, and defenses concern whether Defendants engaged in a scheme to manipulate SFA's financial results and artificially inflate the value of the Company's stock during the Class Period, including whether Defendants knowingly or severely recklessly concealed the Company's channel-stuffing activities and the diminishing demand for its products.

## I.  PRELIMINARY STATEMENT

Securities fraud lawsuits, such as this one, alleging that public companies and their most senior executives issued false and misleading statements to the investing community are ideally suited for class treatment under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").[2]  Class actions provide an efficient mechanism to resolve numerous related claims in one forum, establish uniform standards for conduct, preserve judicial resources, and serve the "public interest[] in the private enforcement of various regulatory schemes, *particularly* those governing the securities markets."  *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d

---

[2]    Plaintiffs' Complaint alleges violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder by the SEC.

718, 727 (11th Cir. 1987)(emphasis added).[3]   As shown below, this lawsuit is ideally suited for class treatment, satisfying all of the requirements for class certification pusuant to Rule 23.

## II.  <u>FACTUAL BACKGROUND</u>

Defendant Scientific-Atlanta is a cable equipment manufacturer that provides cable operators with broadband transmission networks, digital interactive subscriber systems, content distribution networks, and service and support. Complaint ¶ 38.[4]   The Company's major business lines are: (1) its subscriber business, which includes interactive digital set-top boxes, analog set-top boxes and/or cable modems and the software and computer servers that accompany them; and (2) its transmission business, which includes the electronic means to transmit signals to the subscriber products.  *Id.* ¶ 40.

Defendants include SFA's Chief Executive Officer, James F. McDonald, and its Chief Financial Officer, Wallace G. Haislip.  Complaint ¶¶ 30-31.  During

---

[3]      *See also In re Nat'l Data Corp. Sec. Litig.*, Master File No. 1:90-CV-1037-JEC, slip op. at 4 (N.D. Ga. Mar. 31, 1993)("[I]t is well-recognized that class actions are a particularly appropriate means for resolving securities fraud actions.") (attached hereto as Exhibit A) (citing *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983)).

[4]      References to the Complaint herein are to the Consolidated Class Action Complaint filed on January 31, 2002.

the Class Period, Defendants misrepresented and omitted material information pertaining to SFA's financial results by, *inter alia*, flooding the market with positive, albeit false, news regarding demand for its products. *Id.* ¶¶ 56-58, 72-75, 99, 142-43, 148, 154-56, 162-63, 167-70, 177-79, 188, 190-93, 206-07, 210-11. SFA also engaged in extensive channel stuffing in order to meet its stated expectations on earnings.[5] That course of conduct constituted a fraud on the market for the Company's securities.

Defendants minimized the impact of the slowdown from one of its major customers, AT&T, and falsely assured the public that accelerating demand for SFA's set-top products would more than exceed the slowdown in its transmission business. Complaint ¶¶ 56-58, 75, 167, 190, 206. When Defendants reported SFA's sales, shipments, bookings, backlog, accounts receivable, results of operations, and earnings, they did not disclose their pervasive channel stuffing. *Id.* ¶¶ 72-73, 95, 99, 114, 116-17, 119-24, 149-51, 153, 162-65, 167, 169-70, 177-79,

---

[5]For instance, SFA invoiced customers for product not shipped, pursuant to side agreements; Defendants offered unusual discounts and credits to their customers for warehousing extra product; SFA implemented undisclosed aberrant payment terms and return policies; SFA shipped products without firm orders; Defendants issued positive – but false – representations about demand; Defendants reported inflated results of operations; and Defendants failed to disclose the material negative effect their channel stuffing would have on future sales and earnings. *Id.*, ¶¶ 3, 7, 68, 82-83, 85-86, 90-93, 98, 113-14, 116-24, 150, 200-01.

182-84, 190-91, 197-201, 218-21, 224-26, 231.  In order to boost sales figures during this challenging time, Defendants prematurely and improperly recorded millions of dollars in revenue by reporting sales for products that were merely invoiced but not shipped, or were never ordered.  *Id.*, ¶¶ 70, 116, 119-23, 129-35, 162-63.

Defendants' material misrepresentations and omissions concerning SFA's financial condition and channel stuffing activities were undertaken in order to artificially inflate the market price of SFA's stock, and, *inter alia*, to allow the individual defendants to sell $61 million in personal SFA stock at those inflated prices.  *See, e.g.,*Complaint ¶¶ 243-251.  Plaintiffs filed this action to recover the billions of dollars lost by the putative Class members as a result of Defendants' fraud.[6]  Defendants' motion to dismiss the Complaint was denied, and that decision was affirmed by the Eleventh Circuit Court of Appeals.

## III. <u>ARGUMENT</u>

The Court's resolution of this motion for class certification is limited to ascertaining whether Plaintiffs have fulfilled the requirements of Rule 23.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974); *In re DCA Sec. Litig.*, Civil

---

[6]    As SFA's channel stuffing activities and accounting practices were disclosed, its common stock price fell from a Class Period high of almost $66 per share on May 22, 2001, to $21.24 at the close of the Class Period.

Action No. 1:89-CV-2195-RCF, slip. op. at 4 (N.D. Ga. Dec. 21, 1990) (attached hereto as Exhibit B).  In making that determination, this Court must accept the allegations of the Complaint as true.  *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 694 (N.D. Ga. 2002); *In re Miller Indus., Inc., Sec. Litig.*, 186 F.R.D. 680, 684 (N.D. Ga. 1999); *Westlake v. Abrams*, 565 F. Supp. 1330, 1337 (N.D. Ga. 1983).  Indeed, there is "nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen*, 417 U.S. at 177.[7]

A securities suit may be maintained as a class action if all four subsections of Rule 23(a) and at least one of the subsections of Rule 23(b) are satisfied. *Kirkpatrick*, 827 F.2d at 721, n.2.  But the Rule 23 requirements are to be liberally construed in securities cases in order to promote effective enforcement of the

---

[7]      *See also Kirkpatrick*, 827 F.2d at 723 (finding that the district court's "conclusion that the plaintiffs' allegations lacked evidentiary support . . . was an inappropriate inquiry into the merits of the plaintiffs' claims."); *In re Miller*, 186 F.R.D. at 684 ("When considering a motion for class certification, the court does not inquire whether the plaintiffs have adduced sufficient evidence to prevail on the merits of their claims."); *Waldrip v. Motorola, Inc.*, 85 F.R.D. 349, 353, n. 4 (N.D. Ga. 1980) ("It is well recognized that the Court is not required or indeed permitted to assess at the certification stage the likelihood of Plaintiff's entitlement to relief upon trial of the merits.") (citing, *inter alia, Eisen*).

federal securities laws.  *See, e.g., Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985); *Kennedy*, 710 F.2d at 717-18; *In re Theragenics*, 205 F.R.D. at 693; *In re Miller*, 186 F.R.D. at 684.  Accordingly, "the interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing the class action."  *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968).

**A.     The Rule 23(a) Standards For Class Certification Are Satisfied.**

Rule 23(a) identifies four requirements that first must be met in order to maintain a lawsuit as a class action:

> (1)    the class is so numerous that joinder of all members is impracticable;
> (2)    there are questions of law or fact common to the class;
> (3)    the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4)    the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Plaintiffs respectfully submit that they have fulfilled these requirements, as demonstrated below, and that this Court should certify this action as a class action, appointing the Proposed Class Representatives to represent the putative Class.

1.     <u>The Members Of The Class Are So Numerous That Joinder Is Impracticable</u>

Plaintiffs need not establish the exact number of putative Class members, but must merely demonstrate that the classes are sufficiently numerous so that

joinder of all members is "impracticable." *See, e.g., Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 930 (11th Cir. 1983). However, "'[i]mpracticable' is not synonymous with 'impossible,' and the Plaintiffs 'need only show that it would be extremely difficult or inconvenient to join all members of the class.'" *In re Miller*, 186 F.R.D. at 685. Thus, this Court may make "common sense assumptions" in order to support the finding of numerosity. *Evans*, 696 F.2d at 930. *See Eisenberg*, 766 F.2d at 786 (allegations of more than 90 geographically dispersed plaintiffs met the numerosity requirement). Moreover, "[n]umerosity is generally presumed when a claim involves nationally traded securities." *In re Theragenics*, 205 F.R.D. at 694; *In re Miller*, 186 F.R.D. at 685.

SFA securities were at all relevant times traded on the New York Stock Exchange, and, during the Class Period, approximately 387 million shares of SFA common stock were traded on the open market (Complaint ¶¶ 2, 256(a), 256(c)); therefore, the presumption of numerosity applies. *Id*. Irrespective of that presumption, the facts alleged in the Complaint -- which must be presumed as true -- fully support a judicial finding that the numerosity requirement has been met. Plaintiffs believe that there are, at a minimum, thousands of geographically dispersed putative Class members who purchased or otherwise acquired SFA

securities and/or sold put options during the Class Period.[8] (Complaint ¶ 260).  The number of members in the putative Class are unquestionably far more numerous than is required to satisfy Rule 23(a)(1).

> 2.  This Action Involves Questions Of Law And Fact Common To Plaintiffs And The Class

Rule 23(a)(2) requires questions of law or fact common among members of the class.  It is not necessary that *all* such questions be common among class members, only *some* questions of fact or law need be common.  *See Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986); *In re Miller*, 186 F.R.D. at 685; *In re Theragenics*, 205 F.R.D. at 694.  Thus, in *In re T[2] Medical, Inc. Shareholder Litig.*, this Court determined that common questions of law and fact exist where plaintiffs allege multiple misrepresentations and omissions by defendants over the continuous class period under a fraud-on-the-market theory [9]:

---

[8]   The names and addresses of members of the putative Class members are readily available from SFA and/or its transfer agent.

[9]   As described by this Court in *T[2] Medical*:

> The fraud-on-the-market theory is based on the idea that information about a corporation's expected future value is quickly and accurately incorporated into the price at which the corporation's securities trade in public markets.  The defendants are liable for any material misrepresentation which is proved to

The plaintiffs assert claims of fraud on the market based on a continuous course of conduct by the defendants involving a series of misrepresentations and omissions, made by or on behalf of the defendants, over a period of approximately seven months.  The plaintiffs allege that the defendants released such misinformation in order to artificially inflate the stock price for their own financial gain. The court finds that the alleged misrepresentations and omissions are common to all $T^2$ Medical shareholders who owned stock during the period at issue.  Moreover, there are questions of law common to all class members, including whether the defendants' misrepresentations and omissions constituted fraud-on-the-market.  The court finds that questions of both law and fact common to the members of the class exist.

No. 1:92-CV-1564-RLV, 1993 WL 594003, at *5 (N.D. Ga. Nov. 16, 1993).

---

have caused the price of a security traded on an open and developed securities market to deviate from the security's efficient price.  The security's efficient price is assumed to be the price at which the security would have traded in the absence of the misleading information.

1993 WL 594003, at *7 (internal citation omitted).

The fraud-on-the-market theory applies here because the market for SFA's securities -- traded on the New York Stock Exchange (Complaint ¶¶ 29, 256(a)) -- was efficient at all times during the Class Period.  The relevant factors for determining market efficiency have been alleged in the Complaint: (1) the stock trades at a high daily volume (Complaint ¶ 256(d)); (2) the stock is followed by securities analysts (Complaint ¶ 256(g)); and (3) there are empirical facts showing a cause and effect relationship between SFA's unexpected corporate events or financial releases and the response in SFA's stock price (*see* Complaint ¶¶ 16-19, 170-71, 234, 236).  *See In re Nat'l Data*, slip op. at 14-17 (adopting factors identified in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989)). *See also Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999).

Here, as in $T^2$ *Medical*, Defendants have engaged in a fraud on the market through their omissions and misrepresentations in public statements during the Class Period.[10]   The commonality requirement will be met because numerous issues of law and fact are common to each putative Class member, including:[11]

•   Whether Defendants violated Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder;

---

[10]   As alleged in the Complaint, Defendants have made material misrepresentations and omissions throughout the Class Period about demand for SFA products (*see, e.g.* Complaint ¶¶ 41, 51, 54, 56-58, 72-75, 99, 142-48, 153-56, 162-63, 167-70, 177-79, 188, 190-93, 206-07, 210-11), about its pervasive channel stuffing activities and the effect of these activities on future sales and earnings (*see, e.g.* Complaint ¶¶ 3, 7, 68, 72-73, 82-83, 85-86, 90-93, 95, 98-99, 113-14, 116-24, 149-51, 153, 162-65, 167, 169-70, 177-79, 182-84, 190-91, 197-201, 218-21, 224-26, 231), about its financial condition (*see, e.g.* Complaint ¶¶ 70, 116, 119-23, 129-35, 162-63, and in its SEC filings (*see, e.g.*, Complaint ¶¶ 95-100, 141, 147, 189-94, 227-30).

[11]   *See, e.g.,Kirkpatrick*, 827 F.2d at 725 (recognizing that the "numerous and substantial common issues presented by both the fraud-on-the-market and the misrepresentation claims . . . cannot legitimately be considered subordinate to the individual questions presented "); *Blackie v. Barrack*, 524 F.2d 891, 902-05 (9th Cir. 1975) (holding that common questions of law and fact abound where alleged fraud involves uniform written documents such as news releases); *In re ValuJet, Inc. Sec. Litig.*, No. 1:96-CV-1355-TWT, slip op. at 6-8 (N.D. Ga. Aug. 28, 1998)(attached hereto as Exhibit C) (plaintiffs' allegations of a "series of misrepresentations and omissions" in false and misleading public statements satisfied the commonality requirement); *Wells v. HBO & Co.*, [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,009 at 90,052 (N.D. Ga. 1991) ("The key factor in finding commonality . . . was the existence of a common nucleus of operative facts.").

- Whether Defendants participated in and pursued the common course of conduct of which Plaintiffs complain;

- Whether documents, filings, releases and statements disseminated to the investing public omitted and/or misrepresented material facts about Scientific-Atlanta;

- Whether the market price of Scientific-Atlanta's common stock was artificially inflated and the market price of Scientific-Atlanta's put options was artificially deflated throughout the Class Period due to the nondisclosure and/or misrepresentations complained of herein;

- Whether Defendants acted knowingly, willfully, or recklessly in omitting to state and/or misrepresenting material facts;

- Whether the Individual Defendants violated Section 10(b) of the Exchange Act by engaging in insider trading during the Class Period; and,

- Whether the members of the Class have sustained damages as a result of Defendants' misconduct and, if so, the proper measure of such damages.[12]

*See* Complaint at ¶ 263.  Accordingly, this Court should find that the commonality requirement of Rule 23(a)(2) has been satisfied.

3.    Plaintiffs' Claims Are Typical Of The Putative Class Members' Claims.

The typicality requirement of Rule 23(a)(3) requires that the claims of the representative parties have the same essential characteristics as those of the class at

---

[12]    Individual differences concerning treatment of damages will not defeat a finding of commonality.  *Blackie*, 524 F.2d at 905; *In re AmeriFirst*, 139 F.R.D. 423, 427 (S.D. Fla. 1991).

large.  *See, e.g.*, *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985);

*Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984);

*Sheftelman v. Jones*, 667 F.Supp. 859, 863 (N.D. Ga. 1987).  This requirement is

met when the class representatives' claims arise out of the same course of conduct

and are based on the same legal theories as the claims of the other class members.[13]

*Appleyard*, 754 F.2d at 958; *Kornberg*, 741 F.2d at 1337; $T^2$ *Medical*, 1993 WL

594003, at *5.  Thus, the focus of the typicality inquiry is on the Defendants'

conduct, not the Plaintiffs':

> [T]here is no material variation between the plaintiffs' claims and the
> claims of other potential class members.  The common objective of
> the potential class is to show that the defendants committed acts of
> fraud in an attempt to inflate the value of the stock for their own
> financial gain during the class period.

---

[13]     Typicality does not require identical claims or defenses, and "[a] factual
variation will not render a class representative's claim atypical unless the
factual position of the representative markedly differs from that of other
members of the class." *Kornberg*, 741 F.2d at 1337 (citations omitted); *In re
Miller*, 186 F.R.D. at 685; *In re Theragenics*, 205 F.R.D. at 695.  In fact,
"courts have found a strong similarity of legal theories will satisfy the
typicality requirement despite substantial factual differences." *Appleyard*, 754
F.2d at 958; *In re ValuJet*, slip op. at 7; *Sheftelman*, 667 F. Supp. 859, 863
(N.D. Ga 1987).  Moreover, neither a representative plaintiff's degree of
investment experience and sophistication nor his degree of reliance will
preclude satisfaction of the typicality requirement.  *Kennedy*, 710 F.2d at 717;
*In re Miller*, 186 F.R.D. at 686; *In re Nat'l Data*, slip op. at 8-9; *In re
AmeriFirst*, 139 F.R.D. at 429.

$T^2$ *Medical*, 1993 WL 594003, at *6.  "As long as Plaintiffs assert, as they do here, that Defendants committed the same wrongful acts in the same manner against all members of the class, they establish the necessary typicality."  *In re AmeriFirst*, 139 F.R.D. at 429 (citing *Kennedy*, 710 F.2d at 717.).[14]

The requirements of Rule 23(a)(3) are met here.   As alleged in the Complaint, all putative Class members suffered losses as a result of the same wrongful material misrepresentations and omissions by Defendants that affected the market price of SFA's securities.  Thus, if each of the putative Class members filed suit separately, they invariably would assert claims and seek relief identical to the claims and relief asserted by the Plaintiffs in this Complaint.

4.    Plaintiffs Will Adequately Protect The Interests Of The Class.

Rule 23(a)(4) requires plaintiffs to show that they will fairly and adequately protect the interests of all class members.  To satisfy this requirement, plaintiffs must demonstrate that: (1) their interests are not antagonistic to those of the other putative class members; and (2) their attorneys are qualified, experienced, and

---

[14]      *See also In re ValuJet*, slip op. at 7 (The typicality requirement is met where plaintiffs show "that their claims arise from the same events and pattern of misrepresentations and omissions as those of the class they seek to represent.  The fact that their claims may not arise out of identical factual circumstances is insufficient to deny class certification.").

generally able to conduct the litigation. *Kirkpatrick*, 827 F.2d at 726; *In re Theragenics*, 205 F.R.D. at 695-96; *In re Miller*, 186 F.R.D. at 686.[15]

First, Plaintiffs' interests are not antagonistic to those of the other putative Class members, but are directly aligned.  Plaintiffs have been damaged by the same alleged conduct that has damaged the putative Class members.  Plaintiffs seek recovery from Defendants for their losses, a singular goal of this litigation uniting Plaintiffs and all putative class members.  In short, there simply are no known conflicts between the interests of Plaintiffs and the interests of the absent putative Class members.

Second, Plaintiffs' counsel are qualified, experienced and generally able to conduct the litigation.  *See, e.g., Kirkpatrick*, 827 F.2d at 726.   In assessing counsel's competence, "there is a presumption of competence in the absence of proof to the contrary."  *In re DCA*, slip op. at 14 (emphasis in original).  In this instance, the proposed class counsel are firms with a long track record of excellence in securities class actions and other complex litigation matters.  This Court has previously found Chitwood Harley Harnes, LLP to be "highly experienced in class action litigation" and "sufficiently qualified and experienced

---

[15]   "The adequacy inquiry . . . serves to uncover conflicts of interest between named parties and the class they seek to represent."  *In re Theragenics*, 205 F.R.D. at 695; *In re Miller*, 186 F.R.D. at 686.

to prosecute" a similar securities class action. *In re Profit Recovery Group Sec. Litig.*, Master File No. 1:00-CV-1416-CC, slip. op. at 26 (N.D. Ga. Dec. 3, 2002) (attached hereto as Exhibit D).[16]

Similarly, in its more than 85 years of practice, Keller Rohrback L.L.P. has provided expert legal services to clients nationwide. The 58-attorney firm is led by managing partner Lynn Lincoln Sarko, who also heads Keller Rohrback's nationally recognized Complex Litigation Group and has been named Trial Lawyer of the Year by the Trial Lawyers for Public Justice. Courts have repeatedly recognized Keller Rohrback's litigation skills, stating, for example:

> [C]lass counsel recovered an extremely large settlement for the plaintiff class. In fact, this is one of the largest, if not the largest, securities fraud settlement in this district. The settlement size is particularly noteworthy as class counsel did not have the benefit of an SEC or other regulatory agency investigation and so prosecuted the case without assistance. The management of the case was also of extremely high quality. . . . [C]lass counsel is of high caliber and has extensive experience in similar class action litigation. Each of the co-lead counsel firms has a national reputation for advocacy in

---

[16]    Chitwood Harley Harnes, LLP served as co-lead counsel in *In re BankAmerica Corp. Sec. Litig.*, MDL No. 1264 (E.D. Mo.), which resulted in the second largest recovery in this country since the passage of the PSLRA at the time the case was settled. In the Northern District of Georgia, Chitwood Harley Harnes, LLP served as lead or co-lead counsel in the five largest post-PSLRA recoveries in securities class actions in this District, and its attorneys have been commended for their representation of classes in numerous cases.

> securities class actions, and there is no doubt that this standing
> enhanced their ability both to prosecute the case effectively and
> to negotiate credibly. . . . Of particular note in assessing the
> quality of representation is the professionalism with which all
> parties comported themselves.   The submissions were of
> consistently high quality, and class counsel has been notably
> diligent in preparing filings in a timely manner even when
> under tight deadlines.   This professionalism was also displayed
> in class counsel's willingness to cooperate with other counsel
> when appropriate, . . . [which] enabled the parties to focus their
> disputes on the issues that mattered most and to avoid pointless
> bickering over more minor matters.

*In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194-95 (E.D. Pa. 2000).  The biographies of the Lead Counsel law firms are attached as Exhibits E and F.

Plaintiffs respectfully submit that because their interests are not antagonistic to those of the other putative Class members,[17] and their counsel are fully qualified, the two-fold standard of Rule 23(a)(4) is satisfied.

**B.    The Rule 23(b)(3) Standards for Class Certification Have Been Met.**

Plaintiffs seek class certification under Rule 23(b)(3); therefore, in addition to satisfying the foregoing Rule 23(a) requirements, Plaintiffs also must show that:

---

[17]    Additional persons and entities have filed signed certifications in connection with this consolidated action.  Those persons and entities, among others, are willing to serve as class representatives, should this Court deem it necessary.

> the questions of law or fact common to the members of
> the class predominate over any questions affecting only
> individual members, and that a class action is superior to
> other available methods for the fair and efficient
> adjudication of the controversy. . . .

Fed. R. Civ. P. 23(b)(3); *see also Kirkpatrick*, 827 F.2d at 721 n.2.   As

demonstrated below, these requirements also are satisfied.

1.   Common Questions of Law or Fact Predominate Over
      Any Questions Affecting Only Individual Members.

To determine whether the predominance requirement is satisfied, "[c]ourts

generally focus on the liability issue . . . and if the liability issue is common to the

class, common questions are held to predominate over individual questions." *In re*

*Alexander Grant & Co. Litig.*, 110 F.R.D. 528, 534 (S.D. Fla. 1986) (quoting

*Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 93 (S.D.N.Y. 1981)).[18]

In fraud-on-the-market securities cases, this Court has explained that the

predominance requirement is readily satisfied:

> The claims of each member of the class arise out of this same set of
> operative facts.  The legal questions common to each member of the
> class are whether the alleged misrepresentations constitute federal
> securities fraud.  The facts alleged by the Plaintiffs are sufficient to
> satisfy the requirement that common questions of law and fact

---

[18]   Because Rule 23 only requires common issues to predominate, it can be
logically inferred that the "existence of <u>some</u> individual issues will not destroy
common issue predominance."  *Walco Inves., Inc. v. Thenen*, 168 F.R.D. 315,
334 (S.D. Fla. 1996) (emphasis in original).

predominate over individual questions.   <u>A finding to the contrary would be inconsistent with the overwhelming majority of the published decisions in this area.</u>

*In re Miller*, 186 F.R.D. at 688 (emphasis added) (citing *Cox*, 784 F.2d at 1557, and *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997)).[19]

In short, the fraud-on-the-market doctrine provides a predominant common issue in securities fraud cases. *Lipton v. Documation, Inc.*, 734 F.2d 740, 745 (11th Cir. 1984).  Moreover, the presumption of reliance afforded to all class members under the fraud-on-the-market doctrine precludes individual questions of Plaintiffs' reliance on Defendants' misstatements or omissions.[20]  *See, e.g., Basic, Inc. v. Levinson*, 485 U.S. 224, 245 (1988) ("[T]he inquiry in a fraud-on-the-market case is not whether an individual investor was fooled but rather if the market as a whole was fooled.").  Thus, class members simply are not required to prove awareness of

---

[19]    *See also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (In cases alleging securities fraud, "predominance is a test readily met. . . ." ); *Kirkpatrick*, 827 F.2d at 724; *In re DCA*, slip op. at 8, 15-16 ("common questions of law and fact easily predominate over questions affecting individual class members.");  *In re ValuJet*, slip op. at 7; $T^2$ *Medical*, 1993 WL 594003, at *8; *Wells*, [1991 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶96,009 at 90,055.

[20]    The presumption of reliance created by the fraud-on-the-market doctrine is <u>not rebuttable on a motion for class certification</u> because this issue "goes to the merits of the case and cannot be considered by the court on a certification motion."  *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 139 (D.N.J. 1984) (citing *Eisen*, 417 U.S. at 178).

any particular misstatement or omission, or their reliance thereon, and those

reliance issue cannot predominate over common issues of Defendants' liability.

*See Kirkpatrick*, 827 F.2d at 723; $T^2$ *Medical*, 1993 WL 594003, at *7.

Here, Defendants' alleged misrepresentations and omissions were contained

in SFA's SEC filings, press releases, and other statements issued by Defendants

throughout the eight-month Class Period.[21]   The predominance requirement is met

because if every putative Class member were to bring an individual action, each

would have to prove the same elements of Defendants' liability under the fraud-on-

the-market theory, as proof of reliance.   Only then would an individual Plaintiff's

damages be calculated.[22]

---

[21]   Courts have not hesitated to find the requisite predominance of common questions when many false or misleading documents and/or statements have been disseminated over an extended period of time.  *See, e.g., In re Miller*, 139 F.R.D. at 433 (court approves 38-month class period even though facts of the alleged fraud developed over the course of that period). *See also Blackie*, 524 F.2d at 894 (class certified where 45 documents were disseminated over a two-year period); *Green v. Wolf Corp.*, 406 F.2d 291, 294 (2d Cir. 1968) (two and one-half year certified class period spanned the issuance of three prospectuses); *In re U.S. Fin. Sec. Litig.*, 64 F.R.D. 443, 450 (S.D. Cal. 1974) ("many different transactions reported in different statements" over a thirty-four month certified class period); *In re Penn Central Sec. Litig.*, 347 F. Supp. 1327, 1344 (E.D. Pa. 1972) (class certified where public documents were issued over a three-year period).

[22]   Although the amount of each Plaintiffs' damages invariably is an individual question, it does not defeat class action treatment  *See, e.g., Blackie*, 524 F.2d at 905; *In re AmeriFirst*, 139 F.R.D. at 427.

But even in the absence of the fraud-on-the-market reliance presumption, class certification is still appropriate here.  The Complaint alleges that Defendants engaged in a single course of conduct and scheme common to all putative Class members through a series of public misrepresentations that caused SFA's securities to be acquired at artificially inflated prices during the Class Period.  The Eleventh Circuit has held that such allegations create an "overwhelming number of common factual and legal issues . . . [which makes the case] 'particularly appropriate for class action'" certification.  *Kirkpatrick*, 827 F.2d at 724-25.  As a result, "the mere presence of the factual issue of individual reliance could not render the claims unsuitable for class treatment."  *Id.*[23]

In short, there can be no doubt that common questions predominate here.

---

[23]     *See also Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992) ("the defense of non-reliance is not a basis for denial of class certification"); *Blackie*, 524 F.2d at 905 ("Individual questions of reliance are ... not an impediment" to class certification); *Garfinkel v. Memory Metals, Inc.*, 695 F. Supp. 1397, 1403 n.13 (D. Conn. 1988) ("Assuming, *arguendo*, that the market for [the defendant company's] stock w[as] not 'efficient' making the fraud on the market theory's presumption of reliance inapplicable here, individual questions of reliance still would not be sufficient to defeat class certification.").

2.      The Class Action Mechanism Is Superior To Other
        Available Methods of Adjudication.

Not only do common questions predominate in the present litigation, but class action treatment is superior to other methods for the fair and efficient adjudication of this controversy.   Courts repeatedly recognize the general superiority of class treatment in securities litigation involving large numbers of investors.  *See, e.g., In re Theragenics*, 205 F.R.D. at 697; *In re Miller Indus.*, 186 F.R.D. at 688; *In re Nat'l Data*, slip op. at 4.  This is so because most violations of the federal securities laws, such as those alleged in the Complaint, inflict economic injury on large numbers of geographically dispersed persons to such an extent that pursuing individual litigation against well-financed, multiple adversaries is not feasible.   Moreover, "separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."  *Kirkpatrick*, 827 F.2d at 725.

Rule 23(b) sets forth the following factors to be considered in making a "superiority" determination:

A) The interest of members of the class individually controlling the prosecution . . . of separate actions;
B) The extent and nature of any litigation concerning the controversy already commenced by . . . members of the class;
C) The desirability . . . of concentrating the litigation of the claims in a particular forum; and
D) The difficulties likely to be encountered in the management of a

- 22 -

class action.

Fed. R. Civ. P. 23(b)(3).

This lawsuit is best managed as a class action.  Prosecution of this lawsuit on a class basis will be far more efficient than adjudication of individual shareholder claims, including those lawsuits already filed in this District prior to consolidation under the Consolidated Class Action Complaint.  This case has survived Defendants' motion to dismiss (and their subsequent appeal), and Plaintiffs have invested significant resources in the prosecution of the action thus far.  Absent putative Class members certainly have a strong interest in the certification of this lawsuit as a class action, because many lack adequate resources to either obtain necessary information or prosecute their claims.  Few members of the putative Class would, as a practical matter, be in a position to proceed individually against Defendants.  Moreover, it is advantageous to concentrate and maintain the litigation in this Court, as SFA is headquartered within this District, and many of Defendants' alleged wrongful acts occurred here.  Finally, Co-Lead Counsel, who have substantial experience in class action litigation, do not anticipate any significant or unusual difficulties in the management of this litigation.

Plaintiffs respectfully submit that the class action device is the superior method for adjudicating the claims of all the members of the putative Class.

**C.     Rule 23(g) is Satisfied.**

Rule 23(g) complements Rule 23(a)(4)'s requirement that class representatives will adequately represent the interest of class members by focusing on the qualifications of class counsel.  Rule 23(g)(1)(C) specifically instructs that a court consider the work counsel has done in identifying or investigating potential claims in the action, counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, counsel's knowledge of the applicable law and the resources counsel will commit to representing the class, as well as counsel's ability to fairly and adequately represent the interests of the class.

Here, each of these considerations weighs in favor of Class Counsel's adequacy.  Proposed Class Counsel are very experienced in successfully handling securities fraud and other complex class action litigation.  *See* Section A.4 above and Proposed Class Counsels' biographies, Exhibits E and F hereto.  In total, this depth of experience renders proposed Class Counsel highly knowledgeable of the applicable law.

Proposed Class Counsel also have devoted significant effort to identifying or investigating the potential claims in this action, conducting interviews with many former employees of SFA, its customers, and others, and reviewing documents. Proposed Class Counsel have researched and drafted several complaints, including

the current operative Complaint, and proposed Class Counsel vigorously and successfully defended against Defendants' efforts to dismiss the Complaint (including prevailing on appeal) and are actively engaged in discovery.  Going forward, proposed Class Counsel will commit the time and resources necessary to develop the case fully for trial.  Finally, proposed Class Counsel have an excellent working relationship, which will facilitate the flexible and responsive allocation of resources.

Thus, proposed Class Counsel will vigorously, fairly, and adequately represent the interests of the proposed Class, as required by Rule 23(g)(1)(B).

## IV.  CONCLUSION

Plaintiffs respectfully request that this action be certified as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein, and that the Proposed Class Representatives be certified as the Class representatives.

Respectfully submitted this 15th day of April, 2005.

**CHITWOOD HARLEY HARNES, LLP**

_/s/ Craig G. Harley_____
Craig G. Harley
Georgia Bar No. 326813
David A. Bain
Georgia Bar No. 032449
Meryl W. Edelstein

Georgia Bar No. 238919
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Tel: (404) 873-3900
Fax: (404) 876-4476

**KELLER ROHRBACK L.L.P.**
Lynn Lincoln Sarko
Juli F. Desper
Elizabeth A. Leland
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel:  (206) 623-1900
Fax:  (206) 623-3384

**CO-LEAD COUNSEL FOR
PLAINTIFFS AND THE CLASS**

## **Local Rule 7.1D Certification**

Counsel for Plaintiffs hereby certifies that the text of this memorandum has been prepared with Times New Roman 14 point, one of the fonts and point selections approved by the Court in Local Rule 5.1B.

                               /s/ Craig G. Harley
                               Craig G. Harley
                               Georgia Bar No. 326813

**CHITWOOD HARLEY HARNES, LLP**
**1230 Peachtree Street, NE**
**Promenade II, Suite 2300**
**Atlanta, GA 30309**
**(404) 873-3900**
**(404) 876-4476 (facsimile)**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have served a true and correct copy of the foregoing

"PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR

CLASS CERTIFICATION" upon counsel for Defendants by first-class United

States mail to the following:

> Oscar N. Persons
> Susan E. Hurd
> **ALSTON & BIRD, LLP**
> 1201 West Peachtree Street
> Atlanta, Georgia 30309-3424

This 15th day of April, 2005.

>   /s/ Craig G. Harley
> Craig G. Harley
> Georgia Bar No. 326813
> **CHITWOOD HARLEY HARNES,**
>   **LLP**
> 2300 Promenade II
> 1230 Peachtree Street, NE
> Atlanta, GA  30309
> (404) 873-3900
> (404) 876-4476 (facsimile)